Thomas G. Mackey (SBN 174572)
MackeyT@jacksonlewis.com
Alexandra C. Gilinsky (SBN 279271)
Alexandra.Gilinsky@jacksonlewis.com
JACKSON LEWIS P.C.
725 South Figueroa Street, Suite 2500
Los Angeles, California  90017-5408

Telephone:  (213) 689-0404
Facsimile:  (213) 689-0430


Attorneys for Defendant
PRESSTEK, LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PICCARRETO, an Individual, Plaintiff, vs. PRESSTEK, LLC., a New Hampshire Limited Liability Company authorized to do business in the State of California; PRESSTEK HOLDINGS, INC. a Delaware Company authorized to do business in the State of California;  and DOES 1 to 50, Inclusive, Defendants. | Case No.:  16-CV-1862-DMG (JCx)<br><br>**DEFENDANT PRESSTEK, LLC'S TRIAL BRIEF**<br><br><br>Removed:            March 18, 2016<br>Complaint filed:   December 29, 2015 |

## Contents

I.    INTRODUCTION ..................................................................................5

II.   STATEMENT OF FACTS .....................................................................5

III.  LEGAL ARGUMENT ...........................................................................5

      A.    Labor Code §§ 201 and 203 .......................................................5

      B.    Labor Code § 2751 ....................................................................7

      C.    Labor Code § 227.3 ...................................................................8

      D.    Labor Code §§ 226 and 226.3 ...................................................9

      E.    Labor Code § 2802 ..................................................................10

      F.    PAGA Penalties Are Not Available to Plaintiff .....................13

      G.    California Business & Professions Code §17200 ("UCL") Remedies ...........................14

      H.    Plaintiff is Not Owed Any "Unpaid Guaranteed" Commissions ................................17

      I.    Plaintiff Never Paid Back Any Retention Bonus to Xpedx ...............................18

IV.   CONCLUSION ....................................................................................18

**Federal Cases**

*Amalgamated Transit Union Local 1309 v. Laidlaw Transit Services, Inc*., 2009 U.S.
    Dist. Lexis 69842 (S.D. Cal. 2009) ................................................................14

*Freeman v. Chicago Park Dist.*
    (7th Cir. 1999) 189 F3d 613 .........................................................................15

*Hammitt v. Lumber Liquidators, Inc.,*
    19 F. Supp. 3d 989, 1000 (S.D. Cal. 2014) .....................................................11

*Jennings v. Jones*
    (1st Cir. 2007) 499 F3d 2 ..............................................................................15

*Kempf v. Barrett Bus. Servs., Inc.*
    (N.D.Cal. July 31, 2007, No. C-06-3161 SC) 2007 U.S.Dist.LEXIS 86115 ..................7

*Stuart v. Radioshack Corp.,*
    641 F. Supp. 2d 901, 904 (N.D. Cal. 2009). ...................................................12

**State Cases**

*Amaral v. Cintas Corp. No. 2*
    (2008) 163 Cal. App. 4th 1157 ......................................................................10

*Amaral v. Cintas Corp. No. 2*
    (2008) 163 Cal.App.4th 1157 ........................................................................14

*Barnhill v. Robert Saunders & Co.*
    (1981) 125 CA3d 1 .........................................................................................7

*Cortez v. Purolator Air Filtration Products Co.*
    (2000) 23 C4th 163 ..................................................................................15, 16

*Feitelberg v. Credit Suisse First Boston, LLC*
    (2005) 134 CA4th 997 ...................................................................................15

*Gattuso v. Harte-Hanks Shoppers, Inc.,*
    42 Cal. 4th 554, 562 (2007) .........................................................................10

*In re Tobacco Cases II*
    (2015) 240 Cal. App. 4th 779, 796–797, 192 Cal. Rptr. 3d 88 .......................17

*Korea Supply Co. v. Lockheed Martin Corp.,*
    (2003) 29 Cal. 4th 1134 ...........................................................................15, 16

*Pineda v. Bank of America, N.A*
    (2010) 50 CA4th 1389 ..................................................................................16

**Federal Statutes**

Private Attorneys General Act ("PAGA") .......................................................5, 13

**State Statutes**

California Business & Professions Code § 17200 .....................................5, 14, 16

California Business & Professions Code § 17203 ...............................................14, 15

California Business & Professions Code § 17204 ......................................................18

California Code of Regulations § 13520...................................................................6

California Code of Regulations § 13520(a) ..............................................................6

California Labor Code § 201(a) ......................................................................6, 7, 13

California Labor Code § 226 ................................................................5, 9, 10, 13

California Labor Code § 226.3 ................................................................5, 13

California Labor Code § 227.3 ................................................................5, 6, 8, 9

California Labor Code § 2699 ......................................................................13

California Labor Code § 2699(f) ...................................................................13

California Labor Code § 2699(f)(2).................................................................13

California Labor Code § 2751 ..................................................................5, 7, 8

California Labor Code § 970 ..................................................................5, 11, 14

California Labor Code § 972 ........................................................................5

California Labor Code §201 ..................................................................5, 13

California Labor Code §203 ................................................................5, 6, 13, 16

California Labor Code §2802 ............................................................5, 10, 11, 13

## I.   <u>INTRODUCTION</u>

Plaintiff John Piccarreto's Trial Brief attempts to double-count remedies and to overreach by seeking legal damages disguised as equitable remedies.  Plaintiff requests remedies that are actually damages that have already been subsumed within the jury verdict.  Plaintiff asserts that he is entitled to over $900,000 in "restitution" for lost past and future earnings as a remedy for Defendant's alleged violation of California Business and Professions Code § 17200.  As a matter of settled California law, such lost earnings claims are not restitution, but rather legal damages.  Having been denied this remedy by the jury, Plaintiff now improperly re-casts it as a supposedly equitable recovery.

The remaining claims set forth in Plaintiff's Trial Brief, while comparatively minor, suffer from legal and factual defects.  Defendant respectfully sets forth its position below.

## II.   <u>STATEMENT OF FACTS</u>

On January 24, 2017, this Court issued a Final Pretrial Conference Order, ordering the trial to be bifurcated, with Plaintiff's claims for unfair business practices in violation of California Business and Professions Code § 17200 and his claims for violations of California Labor Code §§ 201, 203, 226, 226.3, 227.3, 2802, and 2751, and Private Attorneys General Act ("PAGA"), to be tried to the Court after the jury rendered its verdict on Plaintiff's claims for wrongful discharge in violation of public policy, violation of California Labor Code § 970, fraud, and intentional infliction of emotional distress. *Final Pretrial Conference Order*, ECF No. 37.

On February 24, 2017, the jury rendered its verdict in favor of Plaintiff for the claims of violation of California Labor Code § 970 and intentional misrepresentation.  *Redacted Verdict Form,* ECF No. 52.  With respect to the Labor Code § 970 claim, the jury awarded $59,882 in economic damages, $25,000 in non-economic damages, which were doubled pursuant to Labor Code § 972, for total damages in the amount of $169,764.  *Id.*

## III.   <u>LEGAL ARGUMENT</u>

### A.   **Labor Code §§ 201 and 203**

Labor Code § 201(a) provides, in pertinent part, "if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."   Under Labor Code § 203, if an employer "willfully" fails to pay wages when due to an employee who is discharged, the employee's wages continue at the same rate, up to thirty (30) days.   "Willfully," as used in Labor Code § 203, means that the employer intentionally failed or refused to pay wages that were due.   The DLSE has concluded that a "good faith dispute" prevents a finding of willfulness.   *See* 8 Cal. Code Reg. § 13520.   A good faith dispute exists when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee. The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist.   Defenses presented which, under all the circumstances, are unsupported by any evidence, are unreasonable, or are presented in bad faith, will preclude a finding of a "good faith dispute."   *See* 8 Cal. Code Reg. § 13520(a).

In the instant matter, Plaintiff was terminated on April 20, 2015.   On April 30, 2015, Defendant deposited into Plaintiff's bank accounts all earned and unpaid wages due to Plaintiff at the time of his termination.   *See Joint Exhibits 19-8, 19-9.*   With respect to wages, although Plaintiff was terminated on April 20, 2015, Defendant elected to pay him through April 25, 2015.   *Exhibit 19-8.*   Specifically, Plaintiff was compensated for 80 hours of work, i.e. two weeks of work, for the period of April 12, 2015 to April 25, 2015.   *Id.* With respect to vacation, as explained in detail in the section below covering Labor Code § 227.3, on April 25, 2015, Defendant was paid Plaintiff for all accrued vacation pay.   *See Exhibit 19-9.*   While Defendant concedes that it provided full and complete final payment to Plaintiff five (5) days late, this was merely an oversight in the payroll department.   It was not an intentional failure or refusal to pay wages on the part of Defendant.   Thus, it was not a willful nonpayment of wages within the meaning of Labor Code § 203. Nevertheless, in the event this Court decides to apply Labor Code § 203, Defendant contends that Plaintiff is owed no more than five (5) days wages under the statute or $1,634.80 (8 hours x $40.87 per hour = $326.92 per day x 5 days = $1,634.80).

Plaintiff contends in his brief that he is still owed first and second quarter commissions, vacation, and a relocation fee, Defendant strongly disputes that any such amounts are owed to Plaintiff.  Defendant's defense on each of these claims is further explained in the paragraphs below.  Because Defendant has legitimate defenses to each of Plaintiff's claims, for purposes of Labor Code § 203, it is clear that a good faith dispute exists as to whether Plaintiff is owed these amounts, thereby precluding the imposition of waiting time penalties.  *Barnhill v. Robert Saunders & Co.* (1981) 125 CA3d 1, 7 (waiting time penalty improper where law governing setoffs was unclear and employer's good faith belief in setoff entitlement was undisputed); *Kempf v. Barrett Bus. Servs., Inc.* (N.D.Cal. July 31, 2007, No. C-06-3161 SC) 2007 U.S.Dist.LEXIS 86115 (although the employer's failure to pay the employee the unadjusted bonus at the time of his termination was a violation of Labor Code § 201(a), the court was satisfied that there was a good faith dispute as to whether the employer owed the employee any unpaid wages)

## B.    Labor Code § 2751

Pursuant to Labor Code § 2751, whenever an employer enters into a contract of employment with an employee for services to be rendered within this state and the contemplated method of payment of the employee involves commissions, the contract shall be in writing and shall set forth the method by which the commissions shall be computed and paid.  In addition, the employer shall give a signed copy of the contract to every employee who is a party thereto and shall obtain a signed receipt for the contract from each employee.

Here, Plaintiff has stipulated that he was provided a copy of the 2015 compensation plan.  *See Pretrial Conference Order, Section 5(e) and Joint Trial Ex. 28, 2015 Compensation Plan.* While Defendant was unable to locate a copy of the 2015 compensation plan executed by Plaintiff, Defendant contends that the lack of signature is not dispositive.  Plaintiff has also admitted that he received the written offer letter, dated January 7, 2015.  *See Pretrial Conference Order, Section 5(c) & (d) and Joint Trial Exs. 6 & 7.*  The offer letter sets forth the sales targets for each quarter and corresponding

commission payout.  And most importantly, Plaintiff has admitted that he agreed to the terms stated in the offer letter.  *Day 2 Trial Transcript, p. 31, lines 1-9.*

The stated purpose for amending Labor Code § 2751 was to "protect employees from fraud and abuse, as well as protect employers from unnecessary litigation resulting from vague oral contracts."  *Hearing on AB 1396 Before the S. Comm. On Labor and Industrial Relations,* 2011-2012 Sess. (Cal. 2011).  In enacting the law, the California legislature explained that it was "follow[ing] the lead" of several other states that "require[e] that all employers put commission-based employment contracts in writing."  *Id.*  Plaintiff has admitted to receiving both the 2015 compensation plan and the offer letter.  Thus, the stated purpose of the statute has been satisfied.  Given that Plaintiff has entered into a binding stipulation confirming that he received the compensation plan, his own failure to return a signed copy to Defendant should not warrant a penalty.

## C.    Labor Code § 227.3

Labor Code § 227.3 provides basic rules governing payment for accrued and unused vacation time on termination.  It provides that, unless otherwise provided by a collective bargaining agreement, whenever an employment contract or employer policy provides for paid vacations, and an employee is terminated without having taken off his or her vested vacation time, all vested vacation must be paid to the employee as wages at his or her final rate in accordance with the provisions of the employment contract or employer policy regarding eligibility or time served.  Labor Code § 227.3

Here, Defendant's written "Earned Time Policy" clearly states that earned time (Defendant's flexible alternative to traditional vacation, sick and personal days) is earned "on an accrual basis each month."  *See Joint Ex. 36, Earned Time Policy*.  The policy provides a schedule of accrual hours per month for full-time employees based on years of service.  Per the schedule, the maximum number of days that may be accrued annually for employees with 0-1 years of service is 16 or 10.67 hours per month.  The policy further provides that for "the first year of service, employees begin earning time upon the completion of the first full month of hire."

Here, Plaintiff began his employment with Defendant on January 26, 2015. Pursuant to Defendant's policy, Plaintiff did not begin earning time until the completion of the first full month of hire, i.e. the end of January 2015. Plaintiff worked all of February and March 2015. Based on Defendant's policy, Plaintiff earned 10.67 hours in February 2015 and 10.67 hours in March 2015 for a total of 21.34 hours, which was paid to Plaintiff on February 30, 2015. *See Joint Ex. 19-9.* As evidenced by Joint Ex. 19-9, Plaintiff was properly paid for 21.34 hours of accrued vacation at the rate of $40.8654, for a total of $872.07. *Id.* Because Plaintiff was terminated on April 20, 2015, he did not accrue any vacation hours for that month, as earned time was "earned on an accrual basis each month." *See Joint Ex. 36, Earned Time Policy*

**D.    Labor Code §§ 226 and 226.3**

In his Closing Brief, Plaintiff admits that Defendant issued Plaintiff a total of ten (10) paystubs to Plaintiff. Plaintiff asserts that "each" of the paystubs was an "inaccurate" wage statement as it "did not contain proper information." *Plaintiff's Closing Brief, page 6, lines 19-20.* Plaintiff further asserts that Defendant failed to comply with Labor Code § 226(a) because neither his "vacation accrual" nor his "compensation earned" were accurately reflected on his wage statements. *Id. at lines 14-18.* Plaintiff offers <u>no</u> facts, analysis, or evidence beyond these two blanket statements. Plaintiff does not to point to any specific wage statement or describe in any detail what is "inaccurate" about any of these statements. Indeed, the remainder of Plaintiff's argument is dedicated to a calculation of penalties and damages.

With respect to vacation, Defendant paid Plaintiff all accrued vacation on April 30, 2015. Please refer to the previous section regarding Labor Code § 227.3. And such vacation accrual was accurately reflected on each of Plaintiff's wage statements. *See Joint Ex. 19.* Further, with respect to "compensation earned," Defendant is left to guess as to its meaning. Plaintiff does not explain which particular wage statements provide inaccurate "compensation earned" information. Nor does he define the term "compensation earned." To the extent Plaintiff is claiming that the final wage statement was inaccurate because it

did not reflect the "unpaid guaranteed commission" that Plaintiff claims he was entitled to for the second quarter – which Defendant denies - the maximum statutory penalty at play is $250.00 for the single violation reflected in that paycheck stub.

Moreover, under Labor Code section 226(e), only an employee suffering injury as a result of a knowing and intentional failure by an employer to comply with the statute's requirements is entitled to recover damages.  Thus, based on the language of the statute, there must be a finding that a plaintiff was injured by a knowing and intentional violation of Labor Code § 226.  See *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal. App. 4th 1157, 1195 (Section 226(e) penalizes an employer's "knowing and intentional" failure to provide itemized wage statements and the Labor Commissioner must consider whether violation was inadvertent).  Here, there is no evidence to support that there was any "knowing and intentional" failure on the part of Defendant to provide accurate itemized wage statements or that Plaintiff suffered any injury.

**E.   Labor Code § 2802**

Plaintiff contends that Defendant has failed to reimburse Plaintiff for his relocation expenses in violation of Labor Code § 2802.  As an initial matter, Plaintiff has not submitted any legal authority to support the notion that relocation expenses fall into the category of "necessary expenditures or losses" required to be reimbursed under Labor Code § 2802.  Defendant contends they are not.  The typical expenses covered under the statute include auto-related expenses, travel on company business, cell phones, uniforms, tools and equipment.  The goal of the statute is to "prevent employers from passing their operating expenses on to their employees."  *Gattuso v. Harte-Hanks Shoppers, Inc.,* 42 Cal. 4th 554, 562 (2007).  If relocation/moving expenses were contemplated under the statute, that would mean that any employee that moved to a new city in California for a new job would have the ability to sue their new employer for relocation expenses.  In the absence of some direct controlling authority to the contrary, this cannot be the law.

At the time of Plaintiff's hire, the parties negotiated and entered into an express written agreement that addressed the very issue of relocation expenses. The parties agreed

1   to limit Defendant's responsibility to "reimburse" Plaintiff's relocations expenses "up to
2   $3,500."   Specifically, the initial offer letter did not include any reimbursement for
3   relocation expenses.  *See Joint Ex. 6.*  But during the initial hiring negotiations, Plaintiff
4   requested a relocation reimbursement.   In response, Defendant agreed to assist by
5   "reimbursing [Plaintiff] for incidental expenses up to $3,500."  *See Joint Ex. 7.*

6         Plaintiff asserts in his Closing Brief that he "has already been awarded the sum of
7   $3,500.00 in the damages awarded by the jury..."  *Plaintiff's Closing Brief, p. 7-8.*  Yet,
8   Plaintiff continues to argue, absent any supporting legal authority, that he is entitled to
9   recover the additional sum of $21,500 in relocation expenses (the difference between the
10  $25,000 he claims he actually incurred and the $3,500 already awarded) under Labor Code
11  § 2802.  Plaintiff is double-counting.  The jury returned a verdict for Plaintiff for violation
12  of Labor Code § 970 and fraud and decided what Plaintiff's damages were for those claims.
13  Those damages necessarily included recovery for *any and all* relocation costs.  Put another
14  way, if Plaintiff is correct that the jury awarded him $3,500 in relocation expenses, then he
15  must be bound by the jury's determination that this is the correct amount, and he is
16  therefore not entitled to recover any additional relocation expenses from the Court.

17        Finally, Plaintiff is not entitled to reimbursement of any additional business expenses
18  because he acknowledges that he never disclosed his incurrence of those expenses to
19  Defendant. "To demonstrate that an employer has violated Section 2802, a plaintiff must
20  show that: (1) he or she is an employee; (2) he or she incurred necessary expenses either in
21  the discharge of his or her duties or in obeying the employer's directions; and (3) the
22  employer failed to reimburse the plaintiff for such expenses."  *Hammitt v. Lumber
23  Liquidators, Inc.*, 19 F. Supp. 3d 989, 1000 (S.D. Cal. 2014).  But the employer "must
24  either know or have reason to know that the employee has incurred [the] expense."  *Id;
25  Stuart v. Radioshack Corp., 641 F. Supp. 2d 901, 904 (N.D. Cal. 2009).*

26        *Hammit* is directly on point.  In *Hammit,* the employer moved for summary judgment
27  on the employee's claim for unreimbursed driving costs due to the employee's failure to
28  request reimbursement despite his knowledge of the employer's reimbursement policies.

The employer argued that it had clear written policies to reimburse employees for business-related expenses and that the employee had in fact submitted numerous expense reimbursement reports for the employees he managed. The district court held that while the employee may have regularly incurred reimbursable expenses, the employer was not liable for failure to reimburse the employee for expenses because there was an absence of evidence that the employer knew or had reason to know that the employee had incurred business-related expenses as the employee "did not submit reimbursement requests and voluntarily chose not to do so." *Id at 1000-1001.*

Similarly in *Stuart,* the employees failed to establish that the employer knew or had reason to know that employees were incurring mileage expenses just because they used, and the company expected them to use, their personal vehicles to perform intercompany store transfers. To prevail, the employees would have had to show who logged such information or otherwise received it and whether those persons' knowledge could be imputed to the company.

Plaintiff has provided no reasonable evidence – at any point in this litigation, including Trial - that he in fact incurred any relocation expenses. No receipts, no bank statements, no requests for reimbursement, nothing. At Trial, Plaintiff admitted that he never asked for any reimbursement and never provided any receipts for any relocation expenses to Defendant in order to seek a reimbursement. *Day 2 Trial Transcript, John Piccarreto, page 25, lines 5-9.* Plaintiff simply estimated his expenses at $25,000, and otherwise claimed that some form of documentation for these expenses was locked in storage in New Jersey. *Id. page 26, lines 2-18.* To the extent that Plaintiff submitted mileage reimbursement requests in line with Defendant's policies throughout his employment with Defendant, Trial Exhibit 19 clearly shows that he was in fact paid reimbursement for such expenses. Plaintiff thus admittedly knew how to seek reimbursement, and yet he never did so for any relocation expense.

Defendant did not know, and had no reason to know, that Plaintiff had incurred relocation expenses and therefore is not liable for failure to reimburse Plaintiff for those expenses as a matter of law.

### F.   PAGA Penalties Are Not Available to Plaintiff

California Labor Code § 2699 et seq.  ("PAGA") allows an "aggrieved employee" to file a lawsuit to recover civil penalties for violations of the California Labor Code.  The parties have stipulated that Plaintiff is the only employee covered by his PAGA claim.

Under PAGA, liability exists to the extent that there is liability on the underlying Labor Code claims.  Here, Plaintiff seeks PAGA remedies in connection with the alleged violation of Labor Code §§ 201, 203, 226, 226.3 and 2802.  But PAGA penalties, in the amount of $100 for the first violation and $200 for subsequent violations, are available *only where the underlying Labor Code does not already provide a penalty*.  Labor Code § 2699(f) ("For all provisions of this code *except those for which a civil penalty is specifically provided,* there is established a civil penalty for a violation of these provisions" (emphasis added)).  Here, Labor Code § 203 provides waiting-time penalties for Labor Code § 201 violations; and Labor Code § 226.3 provides penalties for Labor Code § 226 violations.   Therefore, PAGA does not apply to those claims and is only potentially available for the Labor Code § 2802 claim.

The civil penalties recoverable under the PAGA are as follows: $100 for each aggrieved employee per pay period for the initial violation and $200 for each aggrieved employee per pay period for each subsequent violation.  Labor Code § 2699(f)(2). The "subsequent violation penalty" only is imposed after an employer has been notified by a court or the Labor Commissioner that its conduct violates the Labor Code.  *Amalgamated Transit Union Local 1309 v. Laidlaw Transit Services, Inc*., 2009 U.S. Dist. Lexis 69842 (S.D. Cal. 2009); *Amaral v. Cintas Corp. No. 2* (2008) 163 Cal.App.4th 1157, 1207[1].

---

[1] There is a split of authority as to whether a plaintiff may recover the $200 level penalties for "subsequent" violations prior to putting the company and the LWDA on notice of the alleged violation, as several courts have indicated that only $100 level penalties for "initial" violations are appropriate prior to the company being put on notice. At least one federal district court case has held that the "subsequent violation penalty" can only be imposed after an employer has been notified by a

Accordingly, the "subsequent violation penalty" should not be applied because Defendant was never placed on notice by a court or the Labor Commissioner that its policies and practices violated the Labor Code.

## G.   California Business & Professions Code §17200 ("UCL") Remedies

Plaintiff seeks "restitution" in the amount of $854,025.62 under California Business & Professions Code § 17203.  The bulk of this amount is described as $753,626.71 for "front pay" and $118,248.01 for "back pay" had he continued to work for his prior employer, Xpedx[2].  As a matter of law, front pay and back pay are not restitution.

A law professor teaching a first year class in Remedies might say that restitution means "to give the thing back."  Established California Supreme Court precedent, interpreting Business & Professions Code §17200, confirms that this is the essence of restitution.  As described herein, to the extent that employment earnings can constitute restitution, it is only those wages derived from hours worked by an employee, but unpaid by an employer.  Plaintiff has not worked the past and future hours reflected in his $850,000 request.  Presstek has not received the benefit of this work, and does not hold its value in "constructive trust" for the benefit of Plaintiff.  Plaintiff's lost earnings are a thinly disguised legal remedy that the jury has already declined to award to him.

Plaintiff predicates his UCL claim on the jury's finding that Defendant violated (1) Labor Code § 970; and (2) was liable for intentional misrepresentation.  *Plaintiff's Closing Brief,* p. 13 at 18-22.  The jury awarded damages on each of these two claims. *See Redacted Verdict Form*, ECF No. 52.  In connection therewith, the jury evaluated his claim for nearly a million dollars in damages (argued extensively in Plaintiff's

---

court or the Labor Commissioner that the employer's conduct violates the Labor Code.  *Amalgamated Transit Union Local 1309*, 2009 U.S. Dist. Lexis 6984

[2] Apart from the unavailability of back and front pay as restitution, Plaintiff has no evidentiary support for his claim that he would have remained employed at Xpedx.  He admitted, at length, that:  (1) he was actively seeking employment elsewhere based upon a number of changes at Xpedx that adversely affected his employment; and (2) he was actively seeking to move to California to be near his children.  Further, Plaintiff provides no evidence to support his contention that he would have retired from Xpedx at age 70.  *See Plaintiff's Closing Brief, damages analysis.*  According to the U.S. Government Social Security website, full retirement age is 67 years old for persons born after 1960. (https://www.ssa.gov/planners/retire/1960.html)

summation to the jury), and largely rejected the claim.  Plaintiff now characterizes his request for the same monetary award as an equitable remedy.  It should not be lost on the court that what he really seeks is to have this court second-guess the jury's damages findings.  *See Freeman v. Chicago Park Dist.* (7th Cir. 1999) 189 F3d 613, 615; *Jennings v. Jones* (1st Cir. 2007) 499 F3d 2, 7 (when jury returns general verdict, reviewing court views "facts in light most favorable to the verdict.")

Only injunctive and restitutionary relief are available in private UCL actions.  This includes orders to "restore" money or property to any person from whom the money or property has been obtained through unfair competition.  Damages are not available.  *See* Business & Professions Code § 17203; *Cortez v. Purolator Air Filtration Products Co.* (2000) 23 C4th 163, 173 (UCL "is not an all-purpose substitute for a tort or contract action"); *Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 CA4th 997, 1016 (nonrestitutionary disgorgement of profits not an available remedy in a UCL action).  As well, Section 17203 does not mandate restitutionary or injunctive relief when an unfair business practice has been shown.  Rather, it provides that the court "may" grant such remedies.  *Cortez v. Purolator Air Filtration Products Co.,* (2000) 23 C4th at 180.

The object of restitution is to "restore" the status quo by returning to the plaintiff funds in which he or she has an "ownership interest."  *Korea Supply Co. v. Lockheed Martin Corp.,* (2003) 29 Cal. 4th 1134, 1149.  The remedy sought by Plaintiff in this case is not restitutionary because Plaintiff does not have an ownership interest in money he seeks to recover from Defendant.  Plaintiff does not seek the return of money or property that was once in his possession, or that is now in possession of Defendant.  Plaintiff has not given any money to Defendant.  The award Plaintiff seeks would not return any money or property that Defendant took directly from Plaintiff.

In *Cortez v. Purolator Air Filtration Products Co., supra,* 178, the California Supreme Court determined that "earned wages that are due and payable pursuant to section 200 et seq. of the Labor Code are as much the property of the employee who has given his or her labor to the employer in exchange for that property as is property a person surrenders

through an unfair business practice." The Court therefore concluded that such wages could be recovered as restitution under the UCL as "equitable conversion," because "unlawfully withheld wages are property of the employee within the contemplation of the UCL." *Id.* By contrast, for example, an employee may not recover penalties under Labor Code § 203. Such penalties do not qualify for restitutionary relief under Section 17200 because they are not designed to compensate employees for *work performed,* and an employee has *no vested interest* in the penalties until they are awarded. *Pineda v. Bank of America, N.A.* (2010) 50 CA4th 1389, 1401-1402.

While the plaintiffs in *Cortez* had a vested interest in their earned but unpaid wages, Plaintiff cannot claim that he had a vested interest in his past and future earnings for work that he did not perform, but claims he **would have performed** for his former employer, Xpedx. Such alternative earnings cannot be likened to money or property converted by Defendant that can now be the subject of a constructive trust. To create a constructive trust, there must be a *res*, an identifiable kind of property or entitlement **in defendant's hands**. *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal. 4th 1134, 1150. In other words, restitution only applies to things that a defendant owns or holds for the benefit of a plaintiff and refuses to pay or give back. A constructive trust requires money or property identified as belonging in good conscience to the plaintiff which can clearly be traced to particular funds or property in the defendant's possession. *Id.* The recovery Plaintiff requests here cannot be traced to any particular funds in Defendant's possession and therefore is not the proper subject of a constructive trust.

What is more, Plaintiff appears to base his request for restitution solely on the basis of deterrence. "Mr. Piccarreto respectfully requests that this Court exercise its broad remedial power and order restitution for Mr. Piccarreto that would sufficiently deter PRESSTEK from engaging in similar activities in the future." *Plaintiff's Closing Brief, p. 13, lines 4-6.* Importantly however, while an order of restitution may have a deterrent effect on the defendant, an award of restitution may not be based solely on deterrence, as

the intent of restitution is to make the victim whole. *In re Tobacco Cases II (2015)* 240 Cal. App. 4th 779, 796–797, 192 Cal. Rptr. 3d 881.

For all of the foregoing reasons, Defendant respectfully submits that Plaintiff's overreaching claim for nearly $1 million in "restitution" should be rejected.

### H.    Plaintiff is Not Owed Any "Unpaid Guaranteed" Commissions

Plaintiff broadly alleges that Defendant has failed to pay Plaintiff his "full promised commissions." But he does not provide citation to facts, evidence, legal authority, or analysis to support his claim. On Page 28 of Plaintiff's Closing Brief, Plaintiff assigns a dollar amount to the "unpaid guaranteed commissions" owed: $6,580.00.

The plain language of the Plaintiff's Offer Letter, and the 2015 Compensation Plan, clearly demonstrate that Plaintiff was guaranteed $3,420.00 for the first quarter, and $6,780.00 for the second quarter, *provided that Plaintiff remained employed through each quarter*.

The 2015 Compensation Plan expressly provides that Plaintiff is to receive 6% commission of all Zahara revenue, provided he hit his target, and that Defendant will pay in quarterly installments. *Joint Ex. 28-2*. The 2015 Compensation Plan provides a commission calculation example, showing that Plaintiff is projected to earn $3,420.00 for the first quarter (6% of $57,000), and $6,780.00 for the second quarter (6% of $113,000). *Id.* In addition, the Offer Letter provides, "Commissions will be guaranteed for Quarter 1 and Quarter 2, reconciled against actuals for earnings of ~$10,000." *Joint Ex. 7.* As such, Plaintiff was guaranteed a bonus of approximately $10,000 in total: $3,420.00 for the first quarter and $6,780.00 for the second quarter. And most importantly, the 2015 Compensation Plan provides that an employee whose employment is terminated prior to the close of the fiscal quarter is only entitled to commission that have already been ***"earned."*** And ***"commissions are earned after the close of the Presstek fiscal quarter."*** (emphasis added). *Id. at 28-3.* Accordingly, Plaintiff received his first quarter payment of $3,420.00. *Joint Ex. 19-7.* However, because Plaintiff only worked 20 days into the

quarter, his commissions for April were not "earned," and thus he was not entitled to the second quarter bonus.

### I.     Plaintiff Never Paid Back Any Retention Bonus to Xpedx

Also in his Closing Brief, Plaintiff broadly alleges that Defendant has failed to compensate Plaintiff for his "repayment of his $15,000 retention bonus" from Xpedx.  But Plaintiff fails to present any evidence that he suffered any actual injury, i.e. that he repaid the retention bonus to Xpedx.  Put simply, he seeks a remedy for harm that he has not incurred.  California Business & Professions Code § 17204 forbids this result, because it conditions any recovery on an "injury in fact," more specifically "lost money or property as a result of unfair competition."  Plaintiff cannot meet these requirements.

### IV.    **CONCLUSION**

Therefore, for the reasons state above, and in the interest of fairness, Defendant respectfully requests that this Court each of Plaintiff's claims.


DATED:  March 31, 2017                    JACKSON LEWIS P.C.




                                    By:    /S/  Thomas G. Mackey
                                           Thomas G. Mackey
                                           Alexandra C. Gilinsky

                                           Attorneys for Defendants
                                           PRESSTEK HOLDINGS, INC. and
                                           PRESSTEK, LLC

4841-4221-9334, v. 5