# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

JOHN PICCARRETO,

    Plaintiffs,

 v.

PRESSTEK, LLC,

    Defendant.

Case No. CV 16-1862 DMG (JCx)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

   The legal claims in this case came before a jury during a four-day trial that began on February 21, 2017 and concluded on February 24, 2017. The jury returned a verdict in favor of Plaintiff John Piccarreto and against Defendant Presstek, LLC on his claims for violation of California Labor Code Section 970, and intentional misrepresentation. ("Verdict Form") [Doc. # 52.] The jury awarded him $59,882 in economic damages and $25,000 in non-economic damages for a total damages award of $84,882. *Id.* The jury did not award punitive damages. *Id.* On Piccarreto's claim for wrongful termination in violation of public policy, the jury found in favor of Presstek. *Id.*

   In addition to the claims described above, Piccarreto brought claims against Presstek under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §

-1-

17200 *et seq.*; the Private Attorney General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq.*; and for violations of California Labor Code Sections 201, 203, 226, 226.3, 227.3, 2802, and 2751. As to these remaining claims, the Court makes the following findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

# I.
# FINDINGS OF FACT[1]

Piccarreto worked as a Regional Sales Manager for Presstek starting in January 2015. Prior to his employment with Presstek, Piccarreto worked for another company within the same industry in New York. At the beginning of his employment with Presstek, he received a 2015 Compensation Plan, outlining his potential quarterly commission payments. Presstek terminated him on April 20, 2015, and issued his final paycheck on April 30, 2015.

The Court will incorporate other findings of fact in the next section of this Order as it analyzes each of Piccarreto's various claims under the California Labor Code.

Piccarreto bases his UCL claim—predicated on Presstek's Section 970 violation—on the same underlying facts that he presented to the jury.[2] Given that the verdict forms did not require the jury to make any express findings as to why it found for Piccarreto on his Section 970 claim, the Court looks to the jury instructions and the jury's verdict to discern the jury's implicit determinations.

---

[1] To the extent any of the Court's findings of fact may be considered conclusions of law or vice versa, they are so deemed.

[2] To the extent that Piccarreto predicates his UCL claim on the common law claim of intentional misrepresentation, it fails. *See Textron Fin. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 118 Cal. App. 4th 1061, 1072 (2004) ("reliance on general common law principles to support a cause of action for unfair competition is unavailing"); *Klein v. Earth Elements, Inc.*, 59 Cal. App. 4th 965, 969 (1997) ("[w]hile these [common law] doctrines do provide for civil liability upon proof of their elements they do not, by themselves, describe acts or practices that are illegal or otherwise forbidden by law"); *see also Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) ("a common law violation such as breach of contract is insufficient" to establish UCL claim under the unlawful prong).

The Court instructed the jury that for Piccarreto to prevail on the Section 970 claim, he must prove the following by a preponderance of the evidence:

1. That Defendant made a representation to Plaintiff about the kind, character, or existence of work; or the length of time work would last; or the compensation for work;
2. That Defendant's representation was not true;
3. That Defendant knew when the representation was made that it was not true;
4. That Defendant intended that Plaintiff rely on the representation;
5. That Plaintiff reasonably relied on Defendant's representation and changed his residence for the purpose of working for Defendant;
6. That Plaintiff was harmed; and
7. That Plaintiff's reliance on Defendant's representation was a substantial factor in causing his harm.

Jury Instructions No. 20 [Doc. # 55.]

These instructions strongly suggest that, having found for Piccarreto, the jury must have implicitly found that he proved by a preponderance of the evidence that Presstek made intentional misrepresentations to Piccarreto concerning his employment upon which he relied and that this caused him harm.

The Court adopts, as it must, the jury's implicit factual determinations as embodied in its verdict, as well as its explicit factual determination that Piccarreto satisfied his burden at trial of proving by a preponderance of the evidence that Presstek violated Section 970.

In light of the evidence presented by the parties at trial and the jury's explicit and implicit findings as to the Section 970 claim, the Court finds that Presstek engaged in a business practice that, at the relevant time, was forbidden by the law.

# II.
# CONCLUSIONS OF LAW

## A. Labor Code Section 2751 (Signed Commission Contract)

California Labor Code Section 2751 requires that whenever an employer enters into a contract of employment with an employee, the employer must provide a written contract to the employee if the employee's payment involves commissions for services rendered in California. Cal. Lab. Code § 2751(a). In addition, an employer must then give a "signed" copy of the contract to the employee and obtain a receipt for the contract from the employee. *Id.* § 2751(b).

Here, Piccarreto argues that he received only an unsigned commission agreement. *See* Jt. Trial Ex. 6 ("2015 Compensation Plan") [Doc. # 70 at 2–5]. Piccarreto is correct—indeed, no signature appears on the 2015 Compensation Plan Presstek provided to him. In response, Presstek does not dispute the lack of a signature. Def. Trial Brief at 7–8 [Doc. # 66.] It instead argues that "the lack of signature is not dispositive" and that "most importantly, Plaintiff has admitted that he agreed to the terms of the offer letter." *Id.* That is beside the point.

In failing to provide Piccarreto with a "signed" copy of the 2015 Compensation Plan, which is a commission agreement, Presstek violated the express terms of Section 2751(b). *See infra*, section II.F (PAGA penalties).

## B. Labor Code Section 2802 (Necessary Expenditures)

Under California Labor Code Section 2802(a), "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful." Cal. Lab. Code § 2802(a).

But "before an employer's duty to reimburse is triggered, it must either know or have reason to know that the employee has incurred an expense." *Stuart v. RadioShack Corp.*, 641 F. Supp. 2d 901 (N.D. Cal. 2009). In *Stuart*, the Court denied the plaintiff's

motion for summary judgment because it could not conclude as a matter of law that the defendant employer had knowledge of the reimbursable expenses incurred. *Id.* ("there is no evidence as to who within RadioShack logged the information [relating to reimbursable expenses involving the use of personal vehicles to perform intercompany store transfers] (thus making him or her knowledgeable), or who within RadioShack received or otherwise obtained that information (thus making him or her knowledgeable), and whether any of those persons' knowledge is imputable to the company."); *see also Hammitt v. Lumber Liquidators, Inc.*, 19 F. Supp. 3d 989, 1000 (S.D. Cal. 2014) (summary judgment in favor of the defendant employer on Section 2802 claim because "while Plaintiff may have regularly incurred reimbursable expenses, the parties do not dispute that Plaintiff did not submit reimbursement requests and voluntarily chose not to do so").

Here, Plaintiff argues that Presstek "testified during trial that its representatives knew Mr. Piccarreto moved." Pl. Resp. at 10 [Doc. # 67]. Aside from pointing out the obvious, Piccarreto provides no evidence of Presstek's knowledge (or reasons to have knowledge) of the exact relocation expenses he incurred to trigger Section 2802's requirement to reimburse. Indeed, as Defendant points out in its brief, Piccarreto admitted that he neither asked for any reimbursement nor provided Presstek with receipts for any relocation expenses incurred. *See* Doc. # 68 (transcript of Piccarreto trial testimony) ("Q: You never asked for any reimbursement, did you, sir? A: No, I did not. Q: You never provided any receipts for any expenses to Presstek in order to seek a reimbursement, did you? A: Again, no, I did not.").

Significantly, even now, Piccarreto provides no evidence that supports the $25,000 moving-expenses figure that he seeks, let alone evidence that Presstek knew about it.

Accordingly, the Court finds that Piccarreto has failed to carry his burden of proving by a preponderance of the evidence that Presstek violated Section 2802.

## C. Labor Code Section 227.3 (Vacation)

Piccarreto seeks $436.03 in vacation time that he argues he accrued for the month of April.

Section 227.3 states in full:

> Unless otherwise provided by a collective-bargaining agreement, whenever a contract of employment or employer policy provides for paid vacations, and an employee is terminated without having taken off his vested vacation time, all vested vacation shall be paid to him as wages at his final rate in accordance with such contract of employment or employer policy respecting eligibility or time served; provided, however, that an employment contract or employer policy shall not provide for forfeiture of vested vacation time upon termination. The Labor Commissioner or a designated representative, in the resolution of any dispute with regard to vested vacation time, shall apply the principles of equity and fairness.

Cal. Lab. Code § 227.3. In *Suastez v. Plastic Dress–Up Co.*, 31 Cal. 3d 774 (1982), the California Supreme Court ruled that because vacation pay is a "form of deferred compensation," a proportionate right to paid vacation pay vests as services are rendered. *Id.* at 779-781. "Once vested, the right is protected from forfeiture by section 227.3." *Id.* at 784. "On termination of employment, therefore, the statute requires that an employee be paid in wages for a pro rata share of his vacation pay." *Id.*

Here, no party disputes that Presstek paid Piccarreto $872.07 for the months of February and March based on 21.34 hours of vacation time accrued. *See* Jt. Ex. 36 ("Earned Time Policy" stating that maximum hours per month of earned time allowed for employees with 0-1 years of service is 10.67 hours). Presstek argues that because its "Earned Time Policy" states that vacation time is earned "on an accrual basis each month," and it terminated Piccarreto on April 20, 2015, "he did not accrue any vacation hours for that month" of April. Def. Trial Brief at 9.

The Court rejects Presstek's position as it runs counter to *Suastez*. Presstek failed to pay Piccarreto a pro rata share of the vacation pay he accrued during the 20 days he worked in April. The Court therefore awards Piccarreto **$463.03** in unpaid vacation time.

**D.     Labor Code Sections 201, 203 (Wages Payable Immediately)**

Pursuant to California Labor Code Section 201(a), "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." Cal. Lab. Code § 201(a). Under Section 203, where an employer willfully fails to pay an employee's wages upon discharge, "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *Id.* § 203. Whether a commission was due to Piccarreto depends on the commission plan upon which he and Presstek agreed. Courts in California "cases have long recognized, and enforced, commission plans agreed to between employer and employee, applying fundamental contract principles to determine whether a salesperson has, or has not, earned a commission." *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1330–31 (2006) ("The right of a salesperson or any other person to a commission depends on the terms of the contract for compensation.") (citations omitted).

Here, the parties do not dispute that Presstek terminated Piccarreto on April 20, 2015. The evidence reveals, however, that while Presstek elected to pay him through April 25, 2015, it did not provide him with this final payment until April 30, 2015. *See* Jt. Trial Exhibits 19-8, 19-9. Nevertheless, Piccarreto seeks the maximum damages award for 30 days of non-payment—in this case, $7,808.22. Pl. Resp. at 4. He calculated this figure using his $85,000 salary and "guaranteed commissions for quarters one and two totaling $10,000": $85,000 + $10,000 = $95,000/365 x 30 = $7,808.22. *Id.*

The Court rejects Piccarreto's requested remedy in part. As to his first quarter commission payment, he has failed to prove by a preponderance of the evidence that he did not receive it. Under the applicable 2015 Compensation Plan, Piccarreto was projected to earn $3,420.00 in commissions for the first quarter and $6,780.00 for the

second quarter (totaling $10,000 for those first two quarters). *See* Jt. Trial Ex. 28 [Doc. # 71-6.] The 2015 Compensation Plan defines a quarter as containing approximately 13 weeks. Piccarreto's April 16, 2015 pay stub reveals that he received $3,420.00 in commissions during the first quarter. *See* Doc. # 71-3 at 8. In any event, the parties stipulated that Plaintiff was paid commissions in the amount of $3,420 for the first quarter of 2015 as an admitted fact that requires no proof. *See* Final Pretrial Order ¶ 5 [Doc. # 37].

Piccarreto also does not sufficiently explain why the Court should use the maximum 30-day non-payment period under Section 203, especially since he did receive a paycheck on April 30, 2015, which paid him through April 25, 2015. In fact, Presstek "concedes that it provided full and complete final payment to Plaintiff five (5) days late." Def. Trial Brief at 6. Thus, Presstek states that "in the event this Court decides to apply Labor Code § 203, Defendant contends that Plaintiff is owed no more than five (5) days wages under the statute, i.e., $1,634.80 (8 hours x $40.87 per hour = $326.96 per day x 5 days = $1,634.80)." *Id.* In light of its review of the facts and Presstek's concession, the Court awards Piccarreto **$1,634.80 in waiting time penalties** under Section 203 based on his first quarter commission.

With regard to the second quarter commission payment, the Court finds that Piccarreto has proved by a preponderance of the evidence that Presstek owes him the full unpaid amount and waiting time penalties. Piccarreto points to his employment offer letter, which plainly states that "[c]ommissions will be *guaranteed* for Quarter 1 and Quarter 2 reconciled against actual earnings ~ $10,000." *See* Jt. Trial Ex. 7 (emphasis added) [Doc. # 71-5.] The Court acknowledges that the 2015 Compensation Plan states that "[c]ommissions are earned after the close of the Presstek fiscal quarter. Payment of commissions will occur at the end of the fiscal month following the quarter close." Jt. Trial Ex. 28. This language from a separate document, however, does not contravene Presstek's statement to Piccarreto in his employment offer letter that the Quarter 1 and Quarter 2 commission payments are "guaranteed." To the extent there is any ambiguity

1 surrounding the term "guaranteed," the Court construes it against the drafter, which was
2 Presstek in this case. *See, e.g.*, *Consul, Ltd. v. Solide Enterps, Inc.*, 802 F.2d 1143, 1149
3 (9th Cir. 1986) ("It is axiomatic that ambiguities in contractual language are construed
4 against the drafter.").

Accordingly, because the employment offer letter states that the Quarter 2 commission is guaranteed, the Court finds that Piccarreto is owed the **$6,780** Quarter 2 commission payment as well as waiting time penalties of **$557.26** ($6,780/365 x 30 days).

In sum, the Court awards Piccarreto a total of **$8,972.06 in commissions and penalties** under California Labor Code Sections 201 and 203.

**E.    Labor Code Sections 226, 226.3 (Itemized Wage Statements)**

California Labor Code Section 226(a) states that "[e]very employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing . . . (1) gross wages earned, (2) total hours worked by the employee, . . . (5) net wages earned, . . . and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

Here, Piccarreto argues that Presstek failed to comply with this section because "(1) Mr. Piccarreto's vacation accrual was not accurately reflected on his wage statements, and (2) his wage statements did not accurately reflect his compensation earned." Pl. Trial Brief at 6 [Doc. # 65.]

While Presstek failed to pay him the value of his vested vacation time, Section 226(a) "does not does not require employers to provide employees with wage statements that itemize earned vacation hours" or vacation payments. *See Heinzman v. Home Depot U.S.A., Inc.*, 2011 WL 12817699, at *2 (C.D. Cal. Jan. 20, 2011). Indeed, nothing in the text of 226(a) identifies or references earned vacation hours. *See* Cal. Lab. Code § 226(a)

(mandating nine pieces of information to be included in a wage statement, none of which reference vacation time); *Heinzman*, 2011 WL 12817699, at *2 (noting statutory scheme and how section 227.3's "express reference to earned vacation hours and how they should be treated at termination is evidence that § 226(a)'s omission of any requirement that earned vacation hours be itemized was intentional") (citing *Brown v. Kelly Broad. Co.*, 48 Cal. 3d 711, 725 (1989) ("[W]hen the Legislature has carefully employed a term in one place and has excluded it in another, it should not be implied where excluded. . . . [T]he Legislature could have used the same clear language [in subdivision 3] as in subdivisions 4 and 5.")).

Piccarreto asserts that he was not paid his relocation reimbursement or his two guaranteed commissions. *Id.* As discussed *supra*, Presstek did not violate the Labor Code by failing to reimburse him for relocation expenses or pay him his first quarter commission.

But it did violate the Labor Code by failing to pay him his second quarter commission. The Court awards Piccarreto the amount of $250 under Section 226.3—because Presstek failed to include the second quarter commission payment only once in his final paycheck. *See* Cal. Lab. Code § 226.3 ("Any employer who violates subdivision (a) of Section 226 shall be subject to a civil penalty in the amount of two hundred fifty dollars ($250) per employee per violation in an initial citation and one thousand dollars ($1,000) per employee for each violation in a subsequent citation, for which the employer fails to provide the employee a wage deduction statement or fails to keep the records required in subdivision (a) of Section 226."). Accordingly, the Court finds Presstek liable in part under Section 226(a) and awards Piccarreto a **$250** civil penalty under Section 226.3.

## F. PAGA

Under PAGA, a plaintiff may seek civil penalties in the sum of $100 per pay period for an initial violation of certain sections of the California Labor Code, and $200 per pay period for each subsequent violation. Cal. Lab. Code § 2699(f)(1)–(2). Here,

Piccarreto seeks penalties for Presstek's alleged violations of sections 2802, 227.3, and 2751. *See* Pl. Resp. at 11. The Court **GRANTS in part** and **DENIES in part** Piccarreto's requests as follows:

- Section 2802: the Court declines to award Piccarreto penalties because Presstek did not violate this section. *See supra* section II.B (relocation expenses).
- Section 227.3: Because the Court finds that Presstek violated this section by failing to pay Piccarreto for vacation time accrued for the days he worked in April, the Court awards Piccarreto $100 for the March 29–April 11 pay period and $200 for the April 12–April 25 pay period for a **total penalty of $300**. *See* Jt. Trial Ex. 19.
- Section 2751 (signed commission contract): Having found that Presstek violated this section throughout Piccarreto's employment spanning 10 pay periods, the Court imposes a $100 penalty for the first pay period and a $200 penalty for each of the remaining nine pay periods for a **total penalty of $1900**.[3]

In sum, the Court imposes a total of **$2200 in penalties** under PAGA against Presstek.

## G. Unfair Competition Law

The UCL prohibits "unfair competition," which is defined as any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200.[4] Piccarreto

---

[3] Defendant fails to challenge Piccarreto's proposed penalties calculation under PAGA for violating section 2751.

[4] The Court presumes that Piccarreto brings his UCL claim solely under the "unlawful" prong.

The UCL creates a claim for a business practice that is "unfair" even if not specifically prohibited by another law. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1143 (2003). An "unfair" business practice "is one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (citation and quotation marks omitted). Here, Piccarreto

premises his UCL claim on Presstek's violation of California Labor Code Section 970. *See* Pl. Trial Brief at 9.

### 1. Jury's Determinations

"[W]here legal claims tried by the jury and equitable claims tried by the court are 'based on the same set of facts, the Seventh Amendment requires the trial judge to follow the jury's implicit or explicit factual determinations.'" *Sanders v. City of Newport*, 657 F.3d 772, 783 (9th Cir. 2011), quoting *Miller v. Fairchild Indus., Inc.*, 885 F.2d 498, 507 (9th Cir. 1989) ("the district court in deciding the [equitable] claim will be bound by all factual determinations made by the jury in deciding the [legal] claims"); *Los Angeles Police Protective League v. Gates*, 995 F.2d 1469, 1473 (9th Cir. 1993) (reversing district court's denial of equitable relief because it "engag[ed] in factfinding contrary to the implicit findings of the jury verdict").

Since Piccarreto's UCL claim is based on the same underlying facts as the legal claim decided by the jury, it follows from the jury's explicit determination on the legal claim that Piccarreto satisfied his burden of establishing by a preponderance of the evidence that Presstek engaged in an unlawful business practice (i.e., violation of Labor Code Section 970). *See, e.g.*, *Tu Thien The, Inc. v. Tu Thien Telecom, Inc.*, No. CV 11-09899-MWF (JEMx), 2014 U.S. Dist. LEXIS 111200, at *4 (C.D. Cal. Aug. 11, 2014) (adopting jury's findings in ruling on equitable claims because they are based on the same underlying facts as the legal claims).

Accordingly, Piccarreto prevails on his UCL claim based upon Presstek's violation of Labor Code Section 970.

---

makes no argument that Presstek's alleged misrepresentations to him offend public policy, or are otherwise immoral, unethical, oppressive, unscrupulous, or injurious to consumers.

Additionally, he does not argue that Presstek's conduct is likely to deceive the public and reasonable consumers—the "fraudulent" prong therefore also does not apply in this case. *See Comm. on Children's Television v. Gen. Foods Corp.*, 35 Cal. 3d 197, 211 (1983) (business practice under the UCL is "fraudulent" if "members of the public are likely to be deceived.").

## 2. Appropriate Equitable Relief

The Court nonetheless denies various Piccarreto's requests for restitution under the UCL, *see* Pl. Trial Brief at 15, because the jury's compensatory damages award is an adequate remedy at law. *See, e.g.*, *Greene v. Bowen*, 639 F. Supp. 554, 563 (E.D. Cal. 1986) ("[A]s a general matter . . . a person suffering monetary injury has an adequate remedy at law and accordingly equitable relief should be denied."). The jury already awarded him $84,882 in damages on his section 970 and intentional misrepresentation claims. Piccarreto received an opportunity to present his damages claim of nearly a million dollars. The jury rejected it in large part, awarding him just a fraction of that amount. The Court will not second-guess the jury's determination that $84,882 is an adequate remedy. Moreover, compensatory damages are typically "not recoverable as restitution." *Pineda v. Bank of America*, N.A., 50 Cal. 4th 1389, 1402 n.14 (2010); *see also Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 336 (2011) (restitution under Section 17203 is limited to restoration of money that the defendant *acquired* by means of the unfair competition).

In short, while Piccarreto satisfies the elements for a UCL claim based on a violation of Labor Code Section 970, he has not shown that he lacks an adequate remedy at law that addresses the harm that the jury implicitly found he suffered. Piccarreto's sole request for equitable relief in the form of restitution is therefore **DENIED**.

## III.
## CONCLUSION

In light of the foregoing, the Court finds as follows:

1. <u>California Labor Code Section 2751 (Signed Commission Contract)</u>: in favor of Plaintiff and against Defendant.
2. <u>California Labor Code Section 2802 (Necessary Expenditures)</u>: in favor of Defendant and against Plaintiff.

3. <u>California Labor Code Section 227.3 (Vacation)</u>: in favor of Plaintiff and against Defendant. The Court awards Plaintiff **$463.03** in vacation pay.

4. <u>California Labor Code Sections 201, 203 (Wages Payable Immediately)</u>: in favor of Plaintiff and against Defendant. The Court awards Plaintiff **$8,972.06** in commissions and penalties.

5. <u>California Labor Code Sections 226, 226.3 (Itemized Wage Statements)</u>: in favor of Plaintiff in part and against Defendant in part. The Court awards Plaintiff a **$250** civil penalty.

6. <u>PAGA</u>: **GRANTS in part** and **DENIES in part** Plaintiff's request for penalties in accordance with section II.F. The Court imposes a civil penalty against Defendant in the amount of **$2200**.

7. <u>UCL</u>: in favor of Plaintiff and against Defendant. The Court **DENIES** Plaintiff's request for restitution as he has received an adequate remedy at law.

The Court will enter Judgment accordingly.

DATED: August 23, 2017

_____
DOLLY M. GEE
UNITED STATES DISTRICT JUDGE